STEVEN G. KALAR
Federal Public Defender
TAMARA A. CREPET
Assistant Federal Public Defender
55 S. Market St., Suite 820
San Jose, CA 95113
Telephone: (408) 291-7753
Tamara_Crepet@fd.org

Counsel for Defendant GARCHA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 19-00663 EJD (VKD) |
| Plaintiff, | **DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY** |
| v. | |
| SANDEEP GARCHA, | |
| Defendant. | |

## INTRODUCTION

Defendant Sandeep Garcha files this motion to reopen detention proceedings in light of the Cornoavirus-19 (COVID-19) pandemic and new information indicating that there are conditions that will reasonably assure his appearance and the safety of the community.

Mr. Garcha is detained at Santa Rita jail, a location that presents increased risk of infection given the confined conditions. Mr. Garcha is HIV positive, has brain cancer (a glomus tumor), and suffered a pulmonary embolism in 2017. Ex. A (Declaration of Tamara Crepet at ¶ 2). Because of his pre-existing medical conditions and compromised immune system, he is at a significantly greater risk than many of his fellow detainees of contracting COVID-19, and developing a more severe case of COVID-19 or even dying from it. Ex. B (3/25/20 Letter from Shruti Gandhi, M.D.); Ex. C (Declaration of Robert Greifinger, M.D. at ¶¶ 5, 7).

The Bail Reform Act allows for the release of a defendant in an emergency situation like this one. Section 3142(i) specifically allows for the temporary release for "compelling reasons" of someone who has been detained as a danger and/or flight risk.

The Bail Reform Act also allows counsel to move to re-open detention proceedings when there is new information material to the question of whether there are conditions that will reasonably assure a defendant's appearance and the safety of the community. *See* 18 U.S.C. § 3142(f). Here, there is such new information. Ms. Virinder Garcia, Mr. Garcha's sister, is now willing and available to serve as a custodian. Ex. A (Declaration of Tamara Crepet at ¶ 3). Pretrial Services Officer Anthony Granados has vetted her, and now believes that she is a suitable choice. *Id.* at ¶ 4. In addition, Mr. Garcha has demonstrated a growing sense of maturity and responsibility since his detention at Santa Rita; he worked in the jail kitchen from mid-January through early March, at which time jail staff gave him the honor of being a trustee. *Id.* at ¶ 5. Lastly, there is now additional incentive for Mr. Garcha to comply with any conditions of release this court might set because the risk of his remand carries with it the risk of very severe illness or death.

## FACTUAL AND PROCEDURAL HISTORY

Mr. Garcha is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. 922(g). This Court ordered Mr. Garcha's release with conditions on December 20, 2019. Dkt.

No. 14.  His release was secured by real property in the amount of $100,000. *Id.* His mother, Ajmit Garcha, and sister, Virinder Garcia, co-signed the bond, and Ms. Garcha agreed to be a custodian. *Id.*

On December 26, 2019, Pretrial Services filed a Form 8 informing the Court that Mr. Garcha had violated the terms of his release by going to the grocery store with his mother and going into the backyard with his dog. Dkt. No. 15. While Mr. Garcha initially denied knowing that his actions violated the terms of his release, he later admitted to Pretrial Service Officer Anthony Granados that he knew he violated his conditions and that he had been dishonest. Based on these violations, this Court understandably remanded Mr. Garcha to custody on December 27, 2019. Dkt. No. 17. While defense counsel was out of state and not present for the remand hearing, in conversations leading up to it, Officer Granados expressed concern that Mr. Garcha's mother was not a suitable custodian. Ex. A (Declaration of Tamara Crepet at ¶ 4).

Mr. Garcha has come a long way since the time of his remand.  At the jail, he has demonstrated responsibility and the ability to follow rules, as he worked in the jail kitchen from 7:00 a.m. to 3:00 p.m. from approximately January 13 to March 8, 2020, until jail staff made him a trustee. His selection as a trustee is a vote of confidence from the jail staff, given in recognition of his ability to be trusted with increased responsibility.  His responsibilities as a trustee include serving food, cleaning, and delivering laundry. *Id.* at ¶ 5.

In light of Officer Granados's concerns regarding Mr. Garcha's mother as a custodian, defense counsel identified a different custodian and place for Mr. Garcha to live. Specifically, Mr. Garcha's sister, Ms. Garcia, is willing to serve as a custodian and Mr. Garcha could live with her and her family. *Id.* at ¶ 3. Given the current shelter-in-place rules in effect throughout California, Ms. Garcia is currently working from home, and would be able to keep a close eye on Mr. Garcha. *Id.* Officer Granados believes that she would be an appropriate custodian were this Court to order Mr. Garcha's release. *Id.* at ¶ 4.

# ARGUMENT

## I. Mr. Garcha Should Be Released in View of COVID-19 and The Danger It Poses to Him Given His Compromised Immunity

There is currently a global health crisis caused by the coronavirus, and the state and federal governments have declared states of emergency because of its rapid spread. Jail conditions are particularly ripe for the spread of contagious disease.[1] According to Tyler Winkelman, co-director of the Health, Homelessness, and Criminal Justice Lab at the Hennepin Healthcare Research Institute in Minneapolis, "coronavirus spreads quickly in closed spaces, like cruise ships, nursing homes — and jails and prisons . . . ."[2] In New York City, as of March 23, at least 38 people who reside or work in the jail system had already tested positive for coronavirus. The number of people not yet diagnosed but being monitored in "contagious disease and quarantine units" more than doubled in less than a week, and jail officials "expect the number of infected inmates to rise exponentially."[3]

At Santa Rita they are not currently testing people for COVID-19 as a matter of course. Therefore, staff who enter and exit the jail each day could potentially spread the disease while being asymptomatic.[4] *See In the Matter of the Extradition of Alejandro Toledo Manrique*, 19-mj-71055-MAG-1, Order Re: Second Motion for Reconsideration, 3/19/20, p. 1-2 (Noting that with respect to the Maguire jail facility "[s]ymptoms of COVID-19 can begin to appear 2-14 days after exposure, so screening people based on observable symptoms is just a game of catch up. That's why the Bay Area is on lockdown. We don't know who's infected."). In addition, while Santa Rita apparently has a plan for addressing an outbreak, the ability of even the most thorough plan to contain an outbreak is

---

[1] Joseph A. Bick (2007). Infection Control in Jails and Prisons. *Clinical Infectious Diseases* 45(8):1047-1055, *available at* https://doi.org/10.1086/521910 ("The probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, insufficient infection-control expertise . . . .").
[2] "Prisons and Jails are Vulnerable to COVID-19 Outbreaks," The Verge (Mar. 7, 2020), available *at* https://bit.ly/2TNcNZY.
[3] Katie Shepherd, "'Trapped on Rikers': Jails and prisons face coronavirus catastrophe as officials slowly authorize releases," *Washington Post* (March 23, 2020), available at: https://www.washingtonpost.com/nation/2020/03/23/coronavirus-rikers-slow-releases/.
[4] "People with mild or no symptoms could be spreading COVID-19," available at: https://www.weforum.org/agenda/2020/03/people-with-mild-or-no-symptoms-could-be-spreading-covid-19/

*US v. Garcha,* Case No. 19-00663 EJD (VKD);
Mtn for Release                          4

questionable, particularly now that a nurse at Santa Rita has reportedly tested positive. According to Dr. Robert Greifinger, an expert in health care for prisoners, the "only viable public health strategy available is risk mitigation," and "[e]ven with the best-laid plans to address the spread of COVID-19 in detention facilities, the release of high-risk individuals is a key part of a risk mitigation strategy." Ex. C (Declaration of Robert Greifinger, M.D.).

Mr. Garcha is immunocompromised by HIV, brain cancer, and a pulmonary embolism he suffered in 2017. He therefore has a greater chance of becoming severely ill or dying from the coronavirus were he to contract it.[5] In fact, "[a]ccording to preliminary data from China, 20% of people in high risk categories who contract COVID-19 have died." Ex. C (Declaration of Robert Greifinger, M.D. at ¶¶ 5, 7).

In addition to concerns related to COVID-19, counsel is also concerned that Mr. Garcha is not getting adequate oncological care while at Santa Rita. According to Mr. Garcha's neuro-oncologist, Dr. Scott Peak, Mr. Garcha needs an MRI scan of his brain every four months. Ex. D (3/12/2020 Photograph of Letter from Dr. Scott Peak); Ex. A (Declaration of Tamara Crepet at ¶ 6). As of March 12, 2020, Dr. Peak informed Mr. Garcha that he was overdue for a scan and asked him to make an appointment right away. Ex. D, *supra.* Mr. Garcha has made written and oral requests for an MRI to no avail. Ex. A (Declaration of Tamara Crepet at ¶ 7). Given the COVID-19 crisis, counsel suspects that the medical staff's capacity to attend to anything other than crisis management is limited, however, this lack of care and the danger it poses to Mr. Garcha's health yet further supports the need for release.

Section 3142(i) of the Bail Reform Act provides that even after a detention order has issued, "the Court may temporarily release a detained defendant to the custody of an 'appropriate person' where a 'compelling reason' necessitates such release." Courts have ordered temporary release under this section because of the COVID-19 pandemic. Ex. E (*United States v. Gilbert Michaels*, No. 16-cr-76 (JVS) (C.D.C.A. March 26, 2020) (JVS) (ordering defendant's temporary release for ninety days in light of COVID-19 and the defendant's particular susceptibility to it); *United States v. Stephens*, – F. Supp. 3d –, No. 15-cr-95 (AJN), 2020 WL 1295155, *2 (S.D.N.Y. March 19, 2020) (granting release

---

[5] Center for Disease Control and Prevention, "People who are at higher risk of severe illness," available at: https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html

*US v. Garcha,* Case No. 19-00663 EJD (VKD);
Mtn for Release                                                    5

with strict conditions including 24-hour home confinement, in part under § 3142(i) based on the COVID-19 crisis); *see also* Magistrate Judge Cousins' Criminal Case Standing Order Re: Procedure for Review of Detention Orders in Light of Coronavirus Pandemic (March 16, 2020) (setting forth the procedure to reopen detention hearings on the basis of physical and mental condition of the accused in light of the "serious and urgent" nature of the coronavirus "public health crisis").

**II.  Even if Mr. Garcha Were Not at Grave Risk Because of His Compromised Immune System, It Still Would be Appropriate to Reopen the Detention Proceedings Because New Information Indicates that there are Conditions that May Be Set to Assure Mr. Garcha's Appearance and the Safety of the Community**

On December 20, 2019, the Court ordered Mr. Garcha's release with strict conditions. Mr. Garcha violated these conditions shortly after his release. Several facts have changed since Mr. Garcha's initial violations: (1) Mr. Garcha has now had time to reflect on his conduct and knows that he will be remanded immediately should he violate any condition of his release; (2) Mr. Garcha has demonstrated that he is capable of following rules and handling responsibility, as he worked in the jail kitchen for approximately two months and was given the honor of being a trustee; (3) Ms. Garcia, Mr. Garcha's sister, is willing to be a custodian which alleviates Pretrial Services' concerns regarding the unsuitability of Mr. Garcha's mother; and (4) the cost of remand is higher given Mr. Garcha's immunocompromised condition in this COVID-19 era, and the jail's failure to provide him with timely medical care for his brain cancer.

The three-and-a-half months Mr. Garcha has spent in the jail because he violated his conditions, coupled with the responsibility he has demonstrated in the jail since his remand, bode well for the chances of his success on release were he to be given another chance. He knows that he has to fastidiously adhere to any of conditions of release that might imposed, and has shown that he is capable of shouldering that responsibility. Ms. Garcia's willingness to be a custodian additionally serves to assure Mr. Garcha's appearance and the safety of the community as she is working at home and will be able to monitor Mr. Garcha's behavior. Finally, the consequences of a violation has dramatically increased given both COVID-19 and the lack of care provided to Mr. Garcha for his brain cancer, and this will serve to put additional pressure on Mr. Garcha to comply with the conditions of his release.

## **CONCLUSION**

Thus, for the foregoing reasons, Mr. Garcha requests that the Court grant his request for release on bond with any conditions this Court believes to be appropriate. Should the Court wish to have a hearing on this Motion, Mr. Garcha waives his appearance and defense counsel will appear telephonically pursuant to General Order 72.

Dated: 3/27/2020    Respectfully submitted,

STEVEN G. KALAR
Federal Public Defender

_____

TAMARA A. CREPET
Assistant Federal Public Defender

*US v. Garcha,* Case No. 19-00663 EJD (VKD);
 Mtn for Release                    7